**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

WILLIE LEE THOMAS,

      Plaintiff,

     v.                                    Case No.  04-3049

KEVIN L. WINTERS,

      Defendants.

**Order Granting Summary Judgment**

The plaintiff alleges the defendants violated his rights to practice his religion under the Constitution and the Religious Land Use and Institutionalized Persons Act when they forced him to cut his dreadlocks.[1] For the reasons below, the Court concludes that the haircut was the least restrictive means of furthering a compelling governmental interest in the security of the prison., and was not carried out in a manner that might violate the Eighth Amendment.  Summary judgment must therefore be granted to the defendants and this case closed.

**Summary Judgment Standard**

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law.  *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);.Fed. R. Civ. P.56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985).  This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837.  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.  *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).

In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party.  *Beraha v. Baxter Health Corp.*, 956 F.2d 1436,

---

[1]An Eighth Amendment claim was also inferred by the court.

1

1440 (7th Cir. 1992). However, Rule 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## Undisputed Facts

The plaintiff does not state which of the defendants' proposed undisputed facts he disputes, if any. Accordingly, they are adopted herein, to the extent supported by cites to the record. (d/e 43, pp. 2-9) Some of the undisputed facts are also taken from plaintiff's response (d/e 48 and , and are so noted.

1. Plaintiff is a follower of the Rastafarian religion.

2. Before Plaintiff's dreadlocks were cut, he had worn dreadlocks in IDOC prisons since 1998. He wore his hair in dreadlocks in Menard Correctional Center, Graham Correctional Center, Stateville Correctional Center, Pinckneyville Correctional Center, and Lawrence Correctional Center. (d/e 48, p.3).

3. In September, 2003, Plaintiff was transferred from Lawrence Correctional Center to Western Correctional Center. (d/e 48, p.3). He estimated in his deposition that he about 300 dreadlocks at that time (though he was uncertain), and his hair length was to his shoulders. Each of Plaintiff's dreadlocks were a little thinner than the width of a pencil.

4. Rastafarianism prohibits one from cutting his hair.

5. Plaintiff could not take his dreadlocks out. The only way to remove Plaintiff's dreadlocks was to cut them out.

6. When Plaintiff arrived at Western in September, 2003, he was told to take his hair down. According to the defendants' affidavits, Officer Snow reported to Defendant Parker that he (Snow) was unable to search Plaintiff's dreadlocks. (d/e 43, Ex. C, para. 8)(there is no affidavit from Snow). Parker then reported the problem to Defendant Winters (the Warden). Plaintiff responded he could not take his hair down and that dreadlocks were part of his religion. Plaintiff was told that he would then have to have his hair cut, and Plaintiff refused, asking to be transferred to a prison where his dreadlocks would not be a problem. (d/e 43, Ex. A, pp. 46-48).

7. Plaintiff was brought to Defendant Parker's Office and told that he could not have his hair in dreadlocks due to safety and security reasons.

8. Plaintiff was moved to a single cell. On September 25, 2003, Plaintiff was informed that his hairstyle posed a safety and security risk and was directed to cut his hair. Plaintiff refused and was written a disciplinary report for disobeying a direct order.

2

9.  According to Institutional and Administrative Directives 05.03.160, hair presents a security risk if (in relevant part):

a.  The hairstyle impedes or prevents staff from conducting a through search of the hair for contraband;

b. Contraband hidden in the hair may not be detected;

c. Contraband hidden in the hair may injure staff attempting to search the hair; . . .

10. On September 27, 2003, Defendant Winters (the Warden) had a conversation with Plaintiff.  Winters told Plaintiff that Plaintiff's hair presented a safety and security risk because it could not be adequately searched for weapons and contraband.  Winters told Plaintiff that if he failed to voluntarily cut his hair, then the Directives provided that the institutional tact team (i.e. Orange Crush) could be activated to accomplish the haircut.  (d/e 43, Ex. A, ¶ 36).

11. Plaintiff's hair was cut on September 27, 2003.

12. All inmates and their persons, regardless of religious preference, nationality, or hair length or hair style, were subject to searches for contraband and Administrative and Institutional Directives 05.03.160.

13. Searching an inmate's hair is vital in the detection of contraband and is done on a case by case basis depending on the individual's hair and how accessible it is to conduct a thorough search to satisfy the safety and security concerns of the institution.

14. When a search of an inmate's hair is performed the inmate is ordered to take his hair down. If an inmate is wearing his hair in braids, the inmate must be able to remove the braids such that the hair can be searched. If an inmate is wearing dreadlocks, he too, is ordered to take down his dreadlocks.

15. In order to conduct a search of an inmate's hair, it is necessary for security staff to run their fingers through the inmate's hair.

16. Certain hair styles are harder to search than others.  Hair that is worn in dreadlocks may be more difficult to search than other styles of hair, if the hair in dreadlocks is thick and matted.[2]

---

[2]The court declines to adopt Winter's across-the-board statement that dreadlocks are more difficult to search than other hairstyles.  The defendants admit that whether an inmate's hair presents a security risk is a decision is made on a case-by-case basis.  This case does not challenge a general rule banning all dreadlocks–at issue here is whether *Plaintiff's* dreadlocks

17. If an inmate's hair cannot be adequately searched, Departmental rules provide that the inmate may be ordered to cut his hair and if he refuses to do so, the hair may be forcibly cut.

18.  Defendant Winters avers that he is "very aware that staff who attempt to manually search hair that is in locks, braids or other similar hairstyles may be injured by items hidden in the hair such as needles, razor blades or shards of glass. If security staff are required to manually search an inmate's locks, braids or other similar hairstyle they are susceptible to receiving cuts which may lead to infection or the transmission of diseases such as Tuberculosis, Hepatitis or HIV. Hair in locks, braids or other similar hairstyles cannot be thoroughly searched without jeopardizing the safety of the staff performing the search. Hairstyles of this type must be taken down in order to be thoroughly and safely searched."  (d/e 43, Ex. A).

19. Defendant Winters further avers that, "In my experience inmates can also hide objects such as cigarettes, drugs, and money in their hair. . . items like these and others cannot simply be detected by using a metal detector since it does not detect non-metallic contraband."  (d/e 43, Ex. A).   "Since the safety of thousands of Department staff and inmates and the security of all of the Department's institutions are directly involved, requiring an inmate's hair to be able to be safely and thoroughly searched at all times was an operational issue of great importance to me and the other administrators in the Illinois Department of Corrections."

20. On September 30, 2003, an Adjustment Committee hearing was held concerning the plaintiff's September 25, 2003 disciplinary report for disobeying a direct order. The Adjustment Committee recommended that the disciplinary report be expunged and the Warden's office approved the recommendation.

## Analysis

The Court begins with an analysis under the Religious Land Use and Institutionalized Persons Act, for that analysis disposes of the plaintiff's First Amendment claim as well.

RLUIPA provides that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - -

(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental

_____

could be adequately searched.

interest.

42 U.S.C. Section 2000cc-1(a).

The Court accepts for purposes of this order that cutting Plaintiff's hair substantially burdened the practice of his religion. According to the record, a Rastafarian should allow his hair to grow naturally, without cutting, and an inference arises that Plaintiff's dreadlocks grew naturally (though admittedly, it is not entirely clear from the documents the plaintiff submitted). *See Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988).

The question is, then, whether cutting the plaintiff's hair was the least restrictive means of furthering a compelling government interest. The court finds the defendants have met this burden. They have submitted evidence that, in their view, Plaintiff's hair presented a security risk because it could not be adequately searched without putting prison officials at unnecessary risk. Protecting prison officials and preventing inmates from possessing contraband and weapons are unquestionably compelling government interests. And, the defendants also have evidence that the haircut was the least restrictive means of achieving those interests. A metal detector uncovers only metal objects. According to the Warden, and inmate's hair must be searched manually by staff, with fingers, to ensure no contraband is hidden.[3] The plaintiff offers no explanation how his hair, which he estimates at 300 shoulder-length dreadlocks, could have been searched manually without putting officers at risk. The court must afford great deference to prison officials regarding what constitutes a security risk in prison and how that risk is best reduced. *Conyers v. Abitz*, 416 F.3d 580 (7th Cir. 2005)(courts "generally defer to the judgment of prison officials when they are evaluating what is necessary to preserve institutional order and discipline"). Prisons are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). On the facts of this case as presented, neither a court nor a jury may second guess the defendants' determination that Plaintiff's hair could not be adequately searched unless it was cut.

The plaintiff's only evidence that his hair did not present a security risk is that he was allowed to wear dreadlocks in other IDOC prisons for about five years before his transfer to Western. The warden at Western, however, is not compelled to adopt other prisons' judgment calls on security issues. Nor are prisons bound to indefinitely follow past procedures–they can anticipate risks and change their policies in response to those anticipated risks. Further, though plaintiff may not have had trouble with his dreadlocks in other prisons, Western is not the only prison where dreadlocks have been cut. *See Clark v. Briley*, 2005 WL 2369330 (N.D. Ill. 2005)(granting summary judgment to Stateville defendants on dreadlock-cutting claim); *Aresaba*

---

[3]*Benjamin v. Coughlin*, 905 F.2d 571 (2d Cir. 1990) does not support the plaintiff's case. The issue is *Benjamin* was whether haircuts were the least restrictive means of adequately identifying inmates in identification photographs. The court held that an inmate could pull hair back in a ponytail in order to accomplish the same result. Searching the hair was not at issue.

*v. Walls*, 2005 WL 1594552 (S.D. Ill. 2005)(same–Menard).   That is not to say cutting dreadlocks is *per se* constitutional–that is not the question in this case.  The question is whether the *plaintiff's* dreadlocks posed a security risk because they could not be adequately searched. The answer on this record is yes.

      In sum, the haircut did burden the plaintiff's ability to practice his religion, but it did not violate his rights under RLUIPA or the First Amendment (an easier test for the defendants).  *See Borzych v. Frank*, 2004 WL 67642 (W.D. Wis. 2004)(RLUIPA "affords prisoners . . . federal statutory protections above and beyond those embodied in the First Amendment").  As to the Eighth Amendment, the plaintiff makes no argument, nor is there any evidence, that the haircut was conducted in a manner that might amount to cruel and unusual punishment under Eighth Amendment standards.

      IT IS THEREFORE ORDERED that the defendants' motion for summary judgment is granted (d/e 42).  The clerk is directed to enter judgment in favor of the defendants and against the plaintiff.  All other pending motions are denied as moot, and this case is terminated, parties to bear their own costs.

      Entered this 8th Day of March, 2006.


                                        **s\Harold A. Baker**

                                        _____
                                           HAROLD A. BAKER
                                           UNITED STATES DISTRICT JUDGE

6